# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9154 | **DATE** | 5/4/2004 |
| **CASE TITLE** | Natural Juice Co., vs. Orchid Island Juice Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 27 May 04 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Orchid's Motion to Dismiss DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | 5-5-04 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 12 |
| | Mail AO 450 form. | U.S. DISTRICT | | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATURAL JUICE CO.,

    Plaintiff,

v.

ORCHID ISLAND JUICE CO.,

    Defendant.

Case No. 03 C 9154

Hon. Harry D. Leinenweber



DOCKETED
MAY 0 5 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Natural Juice Company (hereinafter, "Natural") brought this action against defendant Orchid Island Juice Company (hereinafter, "Orchid") seeking damages for breach of contract (Count I) and a declaratory judgment (Count II) of its contractual rights. Pending before the Court is Orchid's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.

### I. BACKGROUND

Natural is an Illinois corporation engaged in the business of selling and distributing fresh squeezed fruit and vegetable juice products. Natural has filed a two-count complaint against Orchid, one of its juice suppliers, alleging that Orchid has breached its obligations under an Amended and Restated Exclusive Supply and Independent Distributor Master Agreement (the "Revised Agreement").

According to Natural's Amended Complaint, prior to entering the Revised Agreement, Natural was party to an exclusive distributorship agreement (the "Original Agreement") with the Fresh

Juice Company (hereinafter, "FJC"). FJC was subsequently bought by a company called Saratoga Beverage Group, which was then bought by a company called North Castle Partners (hereinafter, "North Castle"). A few months later, North Castle purchased Orchid and consolidated the manufacturing and packaging operations of FJC, Saratoga, Orchid, and North Castle.

Shortly thereafter a dispute arose regarding the performance of North Castle and its affiliated companies under the Original Agreement. Natural subsequently filed suit in January 2001 against North Castle, Saratoga, FJC, and Orchid for breach of the Original Agreement. Within about a month of filing suit, however, Natural entered into the Revised Agreement with FJC; Orchid; California Day-Fresh Foods, Inc.; Fantasia Fresh Juice Company; and M. H. Zeigler and Sons, Inc. (each individually a "party-company" or collectively the "party-companies"). According to Natural, the parties settled the litigation and Natural dismissed its claims in return for the party-companies' entering into the Revised Agreement.

The Revised Agreement provided that the party-companies would use commercially reasonable efforts to supply Natural with juice products for Natural to distribute exclusively within the territory covered by the agreement. Moreover, the party-companies were to supply products from a party-company maintaining a Florida-based production facility when commercially feasible. According to

Natural, the only party-company with a Florida-based production facility was and is Orchid.

The agreement did not obligate Natural to buy any minimum quantity of juice from the party-companies. However, the agreement required Natural to use commercially reasonable efforts to increase its sales. In addition, the agreement provided that if Natural failed to purchase at least 20,000 gallons of juice in any given month, the party-companies could terminate the Revised Agreement without penalty.

Under the Revised Agreement, Natural paid for its requirements on "cost plus $1.30" basis. In other words, for every gallon of juice supplied, Natural paid the supplier $1.30 plus the cost of the fruit, packaging, labeling, and pasteurization.

The Revised Agreement also permitted the "Companies" (*i.e.*, the party-companies) to terminate the agreement "without cause." To exercise this provision, the party-companies would have to provide Natural with 60 days written notice, and pay a contractually-specified termination fee. The Revised Agreement initially set this fee at $2.5 million, with the fee declining by roughly $21,000 per month between March 1, 2004 and February 28, 2011, when the fee would reach zero. The parties disagree as to whether the agreement required payment of a termination fee for *any* without cause termination, or only for without cause terminations that met the contractually-specified conditions (*i.e.*, 60 days

written notice, apparent breach by all the party-companies collectively).

On October 31, 2003, following a dispute with Orchid concerning alleged overcharges, Natural demanded assurances from Orchid that it would continue to perform under the Revised Agreement. Orchid responded in a November 4, 2003 letter, stating that it "intends to perform pursuant to the Agreement," and that one its employees "is calling [Natural] to schedule a pricing conference." Representatives of both parties attended such a meeting on November 12, 2003. At this meeting, Natural claims that Orchid stated that it neither would pay the overcharge credits requested by Natural, nor continue to sell products to Natural at the price specified in the Revised Agreement. In addition, Natural claims that Orchid threatened that if Natural did not renegotiate its pricing, Orchid would supply product from third-party vendors. These alleged statements and threats by Orchid form the basis of Natural's suit.

## II. **LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989); *Majchrowski v. Norwest Mortgage, Inc.*, 6 F. Supp.2d 946, 952 (N.D. Ill. 1998). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court considers "whether

relief is possible under [any] set of facts that could be established consistent with [the] allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992).

The Court views all the facts alleged in the complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to Plaintiff. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Dismissal is appropriate only where it appears beyond doubt that under no set of facts would Plaintiff's allegations entitle him to relief. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Kennedy v. National Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). The complaint, however, must allege that each element of a cause of action exists in order to withstand a motion to dismiss. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Furthermore, Plaintiff "cannot satisfy federal pleading requirements merely by attaching bare legal conclusions to narrated facts which fail to outline the bases of their claims." *Collins v. Snyder*, 2002 U.S. Dist. LEXIS 25016 at *1 (N.D. Ill. 2002)(citations and quotations omitted).

### III. **CHOICE OF LAW**

The contract at issue contains a provision that states, "[t]his Agreement will be governed by and construed in accordance with the laws of the State of Illinois." Illinois courts honor a contractual choice of law clause unless the applicable law is

"dangerous, inconvenient, immoral, or contrary to public policy." *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 330 (7th Cir. 1987). The parties have not argued that any applicable Illinois law would fall under an exception. Accordingly, the Court will apply Illinois law.

## IV. DISCUSSION

### A. Count I: Breach of Contract Claims

Natural's Count I, for breach of contract, actually contains three separate claims or theories of damages. First, Natural alleges that Orchid breached the Revised Agreement by failing to provide juice products to Natural at the price established by the Revised Agreement. On the same grounds, Natural accuses Orchid of breaching the covenant of good faith and fair dealing. Finally, Natural alleges that Orchid repudiated the Revised Agreement by failing to provide adequate assurances of its performance under the agreement. To make it whole, Natural's Count I seeks monetary damages, including an award of the $2.5 million termination fee.

To state a claim for breach of contract in Illinois, the plaintiff must allege the following elements: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Elson v. State Farm Fire and Cas. Co.*, 691 N.E.2d 807, 811 (Ill. App. Ct. 1998) citing *Nielsen v. United Services Auto Ass'n*, 612 N.E.2d 526, 529 (Ill. App. Ct.

1993). While "Illinois, a fact-pleading state, also requires a plaintiff to allege facts sufficient to indicate the terms of the contract claimed to be breached," the Federal Rules of Civil Procedure "do not require particular facts to be alleged in the complaint." *Arifin v. Schude*, 1999 U.S. Dist. LEXIS 7926 at *5 (N.D. Ill. 1999). As an initial matter, requirements (2) and (4) above are not contested by Orchid, and this court finds that the Amended Complaint sufficiently alleges Natural's compliance with the revised Agreement (paragraph 39) and Natural's injury as a result of Orchid's breach (paragraph 39).

### *1. Challenge to the Validity of the Contract*

Orchid's 12(b)(6) motion seeks dismissal of Count I on several grounds. Orchid begins its attack by arguing that the Revised Agreement constitutes an invalid contract because it lacks mutuality between Orchid and Natural. Orchid notes that the Revised Agreement does not obligate Natural to purchase product specifically from it. Indeed, Orchid points out that the contract does not require Natural to purchase anything from *any* of the party-companies. Rather, the agreement simply provides that Natural will use commercially reasonable efforts to promote its sales, and that if Natural does not buy at least 20,000 gallons per month for three (3) successive months, the party-companies can terminate the contract cost-free.

Orchid's argument fails because Illinois law does not demand mutuality to form a valid contract. *See Land O'Lakes, Inc. v. Fredjo's Enterprises, Ltd.*, 1992 U.S. Dist. LEXIS 7218, at *8 (N.D. Ill. 1992). Rather, Illinois law states that a valid contract requires only consideration. Here, the Revised Agreement contractually absolves all the party-companies from any legal claim Natural may have pending against it. As applied to Orchid, this release allowed Orchid to resolve the then-pending legal claims Natural had filed against it. In doing so, the legal release amounted to sufficient consideration to form the contract. *See Smyth v. Kaspar Am. State Bank*, 136 N.E.2d 796 (Ill. 1956).

### *2. Repudiation*

Orchid also claims that Count I should be dismissed because Natural fails to allege a repudiation of the Revised Agreement. Orchid interprets Illinois Commercial Code provisions 810 ILCS 5/2-610 and 810 5/2-609 to read that Illinois law recognizes repudiation in only two ways: (1) an overt communication of intention that demonstrates a clear determination not to continue with performance; or (2) a failure to provide adequate assurance when so requested by a party having reasonable grounds for insecurity under the contract. Here, Orchid claims that its letter of November 4, 2003, stating that it "intends to perform pursuant to the Agreement" serves as sufficient evidence to support that it

both did not overtly communicate a repudiation, and provided Natural with adequate assurance upon request.

This argument also fails, as the Court notes that paragraph 32 alleges that "Orchid would not sell products to Natural *at the price set forth in the Revised Agreement* (emphasis added)." According to Natural, Orchid issued this statement subsequent to sending its November 3, 2003 letter. As such, Natural's complaint sufficiently alleges that Orchid overtly communicated its intent to repudiate. This satisfies Natural's burden for purposes of surviving a motion to dismiss.

### *3. Insufficient Notice*

Orchid's motion to dismiss further claims that the Amended Complaint fails to state a claim for breach of contract because it does not allege how Natural believes Orchid misinterpreted or breached the Revised Agreement. However, the Seventh Circuit has made clear that, except for claims of fraud, "a complaint is not required to allege all, or any, of the facts logically entailed by the claim. . . ." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). A complaint is only the starting point of litigation. *See Id.* Here, the Amended Complaint alleges that Orchid's breach stems from its failure "to provide juice products to Natural at the price established according to the terms of the Revised Agreement and the course of performance of the parties." Amended Complaint, paragraph 36. In Count II the complaint further requests an order

declaring that the price shall be $1.30 plus the cost of fruit and packaging only. These claims give Orchid more than sufficient notice of Natural's allegations. Therefore, the Court denies Orchid's motion to dismiss this portion of Natural's breach of contract claim.

### B. Breach of Covenant of Good Faith and Fair Dealing

Orchid additionally seeks dismissal of Count I's allegations that it breached the covenant of good faith and fair dealing. Orchid contends that these allegations improperly duplicate the breach of contract claim. Furthermore, Orchid argues that they are improper because Natural fails to allege that Orchid had any discretion under Revised Agreement, a necessary condition for a breach of the covenant of good faith and fair dealing.

To support Orchid's argument that Natural's breach of the covenant of good faith and fair dealing claim improperly duplicates its breach of contract claim, Orchid cites *Codest Eng. v. Hyatt Int'l. Corp.*, 954 F. Supp. 1224, 1233 (N.D. Ill. 1996), and *Pepsico, Inc. v. Vita-Fresh Vitamin Co.*, U.S. Dist. LEXIS 27026, at *3-4 (N.D. Ill. 1986). However, these two cases are easily distinguished from the present action. In each cited case, the court properly dismissed the complaints because the breach of the covenant of good faith and fair dealing claims constituted their own counts, separate from the breach of contract counts. In doing so, the complaints ran afoul of the Illinois rule that there is no

such thing as an independent claim for the breach of the implied covenant of good faith and fair dealing. *See Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992).

Here, however, the Amended Complaint subsumes both these claims under Count I, the breach of contract claim. This conforms to Illinois practice, which permits plaintiffs to plead violations of the covenant of good faith and fair dealing as *part* of a breach of contract claim. *See Banco Del Estado v. Navistar Int'l Transp. Corp.*, 942 F. Supp. 1176, 1182 (N.D. Ill. 1996); *Solon v. Kaplan*, 2001 U.S. Dist. LEXIS 1384, at *14 (N.D. Ill. 2001). Ergo, this argument fails.

As to the second allegation, this court believes that Natural has sufficiently alleged both discretionary duties and a breach of those discretionary duties. Specifically, Natural alleges in paragraph 29 of the Amended Complaint that Orchid informed it that if Natural will not negotiate its pricing, Orchid will supply product from third-party vendors.

This, claims Natural, is a clear breach of its duty under § 5(a) of the Revised Agreement, which states:

> Each of the Companies will use commercially reasonable efforts to supply Products to [Natural] hereunder and . . . agrees that when commercially feasible, the Products will be supplied from a Company maintaining a Florida-based production facility . . . In

- 11 -

>            addition, any Company may at any time and from
>            time to time elect to supply to [Natural]
>            Products that are produced by third-party
>            suppliers.

A fair reading of § 5(a) suggests the contract implicitly vests Orchid with the discretionary authority to determine when it was "commercially feasible" to supply juice from a party-company with a Florida production facility. Since Natural claims that Orchid is the *only such party-company*, this provision effectively means Orchid's *own* juice. Interestingly, § 5(a) also grants Orchid the right to supply juice from third-party vendors "at any time," a seeming contradiction of its obligation to supply its own juice when "commercially feasible." Natural asks the Court to reconcile these provisions by interpreting the contract to grant Orchid the right to use third-party vendors, but only when it is not "commercially feasible" to supply its own juice. Although the Court makes no final contract determination today, this seems a plausible enough interpretation to survive a motion to dismiss. As Natural claims that Orchid conditioned its to use third-party vendors on Natural agreeing to its pricing demands, and not with respect to commercial feasibility, Natural sufficiently alleges an abuse of a discretionary duty. Consequently, Natural properly alleges a breach of the covenant of good faith and fair dealing. *See B.A. Mortgage & Int'l Realty Co. v. Am. Nat'l Bank and Trust Co. of Chicago*, 706 F. Supp. 1364, 1373 (N.D. Ill. 1989)(a complaint states a cause of action for breach of contract if it

alleges a failure to act in good faith in exercising discretion permitted under the contract).

As a result, Orchid's motion to dismiss Natural's claim of breach of the covenant of good faith and fair dealing is denied.

### C. Termination Fee

In both Counts I and II, Natural claims its right to be awarded the termination fee provided for in Clause 17(a) the Revised Agreement. That clause states in part:

> At any time, upon 60 days' prior written notice to [Natural], the Party-companies may terminate this Agreement without cause ("Without Cause Termination"). On or prior to the effective date of a Without Cause Termination, the Companies will pay to [Natural] . . . the Termination Fee in effect on the effective date of termination of this Agreement. The Termination Fee will be calculated as of the effective date of any Without Cause Termination and initially will equal $2.5 million. Beginning on March 1, 2004, the Termination Fee will decline monthly by $20,833.33 until February 28, 2011, after which no Termination Fee will be payable for a Without Cause Termination. [Natural] and the Companies agree that the Termination Fee constitutes reasonable compensation to [Natural] for a Without Cause Termination [sic] will constitute full satisfaction of all obligations then owed to [Natural] under this Agreement.

Since Natural claims that Orchid has breached the Revised Agreement "without cause," Natural demands that Orchid pay it the contractually specified termination fee of $2.5 million.

Orchid responds that, according to Clause 17(a), a termination without cause occurs only when the "Companies," collectively,

provide 60 days written notice to Natural. Here, Orchid contends that since it acted unilaterally, and gave no notice, it did not commit a Clause 17(a) termination without cause.

In Orchid's view, Clause 17(a) provides an *option* for the party-companies to contractually-withdraw from their relationship with Natural by paying the applicable termination fee. Were the party-companies to exercise this option, they would not be in actual breach of the agreement.

Conversely, Orchid argues that, based on the facts alleged in the Amended Complaint, it committed an *actual breach*. Since the Revised Agreement does not specify damages for such a breach, Orchid argues that Natural's remedy rests in an ordinary breach of contract action in which it must prove its damages suffered.

Although the Court takes no position on the ultimate merit of Orchid's arguments, the Court does not believe they represent the only possible interpretation of its contract with Natural. Specifically, Natural makes a cogent argument that the Revised Agreement recognizes both possible types of contract terminations – those with cause, and those without cause. Any contract breach for which there is no cause, argues Natural, must be read as a termination *without cause*, thus triggering the contract's award of the termination fee. An alternative reading, Natural contends, would suggest that the contract permits Orchid to avoid paying the termination fee for an intentional unjustified breach, provided it

breaches unilaterally and without giving notice. Such a reading leads to the usual outcome that the contract provides an *incentive* to breach without giving notice to Natural - as it would reimpose on Natural the difficult trial burden of proving damages in a regular breach of contract suit. Indeed, Natural argues that the parties agreed to Clause 17(a) precisely to avoid placing such a burden on Natural, noting that Clause 17(a) defines the termination fee as "reasonable compensation to [Natural] for a Without Cause Termination."

Furthermore, Natural argues that to permit Orchid to escape the termination fee because it breaches unilaterally would similarly lead to an odd contractual result. After all, Natural alleges that for seven months out of the year, it deals exclusively with Orchid, as Orchid is the only party-company with a Florida-based production facility. During this period, Orchid effectively is the only party-company constituting the "Companies." By reading the contract as Orchid desires, Natural notes that the contract would allow the centrally important contracting party to escape paying the termination fee, imposing substantial trial obligations on Natural, provided that far less important party-companies would continue to satisfy their obligations. Additionally, Natural points out that the contract elsewhere gives individual party-companies the unilateral authority to terminate the Revised Agreement under certain conditions, such as those delineated in

Clauses 4(b)(iii) and 17(b)(ii). Natural suggests that if the contract provided for individual party-companies to withdraw for cause, *ipso facto*, the contract similarly intended to provide the circumstance in which a single party-company breaches without cause. This leads to Natural arguing that the contract intended for any breaching party to pay the termination fee, regardless of whether or not they complied with the notice requirements of Clause 17(a) or whether they acted unilaterally or collectively with the other party-companies. In the view of the Court, this is a reasonable interpretation of the parties' intent.

As noted above, the Court should grant a motion to dismiss *only* if no relief is possible "under [any] set of facts that could be established consistent with [the] allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). A motion to dismiss is improper if the Court finds that the contract's language is ambiguous regarding the parties' intent. *See Quake Constr., Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288-289 (1990). This, in turn, depends on whether the Court believes that the contract has more than one reasonable meaning. *See Meyer v. Marilyn Miglin, Inc.*, 652 N.E.2d 1233 (Ill. App. Ct. 1995). Here, as noted above, the Court finds that both Natural and Orchid present legitimate, plausible interpretations of the contract regarding the termination fee issue. Consequently, the Court denies Orchid's motion as to the termination fee claims.

## D. Count Two: Declaratory Relief

In Count II, Natural claims that an actual controversy exists regarding the proper calculation of the price term under the Revised Agreement and regarding whether Orchid may supply products from third parties. Natural requests declaratory relief stipulating that (1) Orchid must supply products at a price of $1.30 plus the cost of fruit and packaging; (2) that Orchid must supply its own products when commercially feasible; and (3) that Orchid is in breach of the Revised Agreement and awarding Natural its damages, including the $2.5 million termination fee.

In its motion to dismiss, Orchid attacks Count II on the grounds that the requested declarations are inconsistent with one another, making the single claim in which they appear, paragraph 42 of the Amended Complaint, internally inconsistent. Orchid argues that the court cannot order Orchid both to supply its own products to Natural, and at the same time order Orchid to be in breach of the agreement and to pay Natural the $2.5 million termination fee. Natural responds that even assuming these two requested declarations are inconsistent, the Federal Rules of Civil Procedure nonetheless allow parties to demand relief in the alternative. FED. R. CIV. P. 8(a)(3)("Relief in the alternative or of several different types may be demanded.").

While Natural's requested declarations do occur as part of the same paragraph, the requested declarations are in fact the remedies

requested by Natural. Since remedies may be pleaded in the alternative, requests for inconsistent declarations appear to be condoned by the Federal Rules of Civil Procedure, and therefore cannot be stricken at the pleadings stage. Orchid's motion to dismiss Count II is therefore denied.

V. **CONCLUSION**

For the reasons stated herein, Orchid's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: May 4, 2004